CECIL W. PEARSON

V.

CANADA CONTRACTING COMPANY, INC., ET AL.

Record No. 830982

JAC BOODEN ORTHOPEDIC SUPPLY COMPANY, INC.

V.

RICHARD M. JONES

Record No. 840521

October 10, 1986

Present: All the Justices

*Robert C. Metcalf (Parker, Pollard & Brown, P.C.*, on brief), for appellant (Record No. 830982).
*Frank B. Miller, III (Roger L. Williams; Sands, Anderson, Marks & Miller*, on brief), for appellee Canada Contracting Company, Inc. (Record No. 830982).

*James H. Flippen, III (Andrew C. Mitchell, Jr.; Breeden, MacMillan & Green; Cullen, Clark, Insley & Hanson*, on briefs), for appellant (Record No. 840521).
*William D. Breit (Breit, Rutter & Montagna*, on brief), for appellee (Record No. 840521).

COCHRAN, J., delivered the opinion of the Court.

These two appeals present one dispositive question: what duty of care is owed by an owner or occupier of land to a fireman or policeman injured when he comes on the premises in the performance of his official duties?

## I.

On June 25, 1979, about 9:30 p.m., Cecil W. Pearson, employed as a fireman by the City of Richmond, responded to a reported fire in a building on Brown's Island in Richmond. He was injured when he fell to the basement through a hole in the floor. In an amended motion for judgment, Pearson sought to recover damages for his personal injuries from Ethyl Corporation, owner of the property, Canada Contracting Company, Inc. (Canada), the contractor engaged in demolition of the building, and C. S. Lewis, the subcontractor engaged in cutting and removing metal from the building. Pearson alleged in separate counts negligence, negligence *per se*, and nuisance. Over his objection, the trial court

sustained certain defendants' demurrers and dismissed the negligence and negligence *per se* counts. On motion of Pearson, the nuisance count was also dismissed.

With leave of court, Pearson filed a second amended motion for judgment, alleging that Canada and Lewis had removed steel guard rails formerly protecting the hole through which he fell, that they had covered and obscured the hole by material inadequate to support his weight, that this condition was known to all three defendants and was a man-made trap or hidden danger, and that defendants knew or should have known he or other firefighters had been and would probably be coming on the premises at night to fight fires. Pearson alleged the defendants breached a duty to warn him of the hidden danger and thereby proximately caused his injuries. Defendants filed separate demurrers and grounds of defense. Thereafter, Ethyl Corporation was dismissed as a party defendant upon Pearson's execution of a covenant not to sue.

The trial court fashioned a general rule, patterned after the duty owed to licensees, of limited liability to persons entering land under a privilege, such as policemen and firemen.[1] *Cf.* Restatement (Second) of Torts §§ 342, 345 (1965). Creating an exception to this rule, however, the court further restricted the duty owed in cases involving premises on which construction or demolition work is under way by requiring the possessor of property to warn of a dangerous condition only if he knows the privileged person is on the premises.[2] Applying this exception, the court sustained the defendants' demurrers and dismissed the action.

---

[1] The general rule enunciated by the trial court stated:

A possessor of premises is subject to liability for bodily harm caused by a natural or artificial condition thereon to others who are privileged to enter upon the premises for a public purpose without the consent of the possessor, if the possessor

(a) knows that they are upon the premises or are likely to enter upon it in the exercise of their privilege, and

(b) knows of the condition and should realize it involves unreasonable risk to them, and

(c) should have expected they would not discover or realize the risk, and

(d) fails to exercise reasonable care

(i) to make the condition reasonably safe or

(ii) to warn them of the condition and risk involved therein.

[2] The exception stated:

However, if the bodily harm results from conditions on the premises involving construction or demolition activities, and if persons privileged to enter upon the premises for a public purpose know, or in the exercise of reasonable care should

## II.

Richard M. Jones, a police officer employed by the City of Norfolk, brought an action against Jac Booden Orthopedic Supply Company, Inc. (Booden), for injuries sustained in the performance of his duties on the Booden property. Jones alleged that Booden was negligent in the operation of its premises. A jury awarded Jones $3,000 in damages and the trial court entered judgment on the verdict.

There was no material conflict in the evidence. Jones and two other police officers responded to a report of a burglary at a church behind the Booden premises about 5:15 p.m. on August 9, 1982. Finding the church had been broken into, the officers searched the surrounding area. Jones ascended a stairway at the rear of the Booden property, crossed the wooden platform at the top of the stairs, and went on the Booden roof to look for a suspect or evidence of the crime. When he returned to the platform, he informed an officer below that the roof was clear. As Jones stood on the platform, it collapsed and he was injured in falling.

The stairway, set back about eight feet from the sidewalk, did not look like a front entrance and was "obviously a rear entrance to the roof area." The stairs, made of steel, formerly had led to a second floor apartment, but this had not been occupied since 1965. At the time Jones fell, the stairs had no apparent purpose. Previously, they had been roped off to bar intruders, but when Jones used them they contained no rope, barricade, or warning signs.

Police had once apprehended a criminal suspect on the Booden roof, and Jones and other officers had been on the roof in the past while making routine police investigations. No one at Booden was aware of the prior arrest, however, or knew that police officers from time to time used the stairs to go to the roof.

Prior to Jones's fall, no defects in the wooden platform had been observed by Jones, by other officers accompanying him, or by Booden employees who had been on the platform. There was evidence, however, that wood from the platform which the officer examined after the accident was rotten.

know, that such activities are being conducted thereon, then the possessor is not liable, unless the possessor has:

    (i) actual notice of the premises condition which caused the bodily injury, and

    (ii) actual knowledge of the presence on the premises of persons so privileged, and

    (iii) having obtained such notice and knowledge as set forth in (i) and (ii) above, fails to use reasonable care to warn the persons so privileged.

The trial court, after denying Booden's motion to strike the evidence, granted an instruction on the duty of care owed to Jones as a licensee.[3] It refused Booden's proffered instruction identical to the general rule announced by the trial court in the Pearson case. *See supra* note 1. The court also refused an alternative instruction offered by Booden on the duty owed to Jones as a bare licensee.[4]

## III.

We have held that firemen may not recover for another's negligence in setting a fire, concluding that firemen assume the risks of the usual hazards involved in firefighting, regardless of the origin of the fire. *C & O Railway* v. *Crouch*, 208 Va. 602, 608-09, 159 S.E.2d 650, 655 (1968). We have not been previously called upon, however, to determine the extent of an occupier's liability to firemen or policemen for injuries resulting from risks beyond those inherently involved in firefighting or police work.

Cases addressing this issue have reached varied results, in large part because of the difficulty in placing firemen and policemen in any of the traditional categories of persons entering land of another — trespassers, licensees, or invitees. A trespasser is one who unlawfully enters the land of another. *See Richmond Bridge Corp.* v. *Priddy*, 167 Va. 114, 118, 187 S.E. 518, 519 (1936). A licensee is one who enters for his own convenience or benefit with the knowledge and consent, express or implied, of the owner or

---

[3] Instruction 7 provided:

When the defendant by the use of ordinary care:

1. knows or should know of an unsafe condition on his premises; and

2. should realize that it involves an unreasonable risk of harm to a licensee; and

3. should expect that a licensee will not discover or realize the unsafe condition; and

4. a licensee does not know or have reason to know of the unsafe condition and the risk involved; then the defendant [has] a duty to use ordinary care either to make the condition reasonably safe or a duty to warn a licensee of the unsafe condition.

If the defendant failed to perform any one or more of these duties, then he was negligent.

[4] Refused instruction 11A provided:

The Court instructs the jury that the plaintiff was a bare licensee on the defendant's premises, and the defendant owed him no duty to have his premises in a safe condition. The burden is on the plaintiff to prove by a preponderance of the evidence that the defendant knew, or in the exercise of ordinary care should have known, that the plaintiff was in danger and that thereafter the defendant failed to exercise ordinary care to protect him from injury . . . .

occupier. *See, e.g., Bradshaw* v. *Minter*, 206 Va. 450, 452, 143 S.E.2d 827, 828-29 (1965) (social guest is licensee, not invitee, regardless of existence of express invitation); *Ingle* v. *Clinchfield R. Co.*, 169 Va. 131, 137, 192 S.E. 782, 784 (1937) (owner's silent acquiescence in repeated use made trespassers licensees); *Ches. & O. R. Co.* v. *Corbin*, 110 Va. 700, 702-03, 67 S.E. 179, 180 (1910) (known use of railbed by general public with tacit consent of railroad company made users licensees). And an invitee is one who enters pursuant to the express or implied invitation of the owner or occupier other than for a social purpose or for his own convenience. *See, e.g., Colonial Nat. Gas* v. *Sayers*, 222 Va. 781, 784, 284 S.E.2d 599, 601 (1981) (tenant using common area was invitee); *City of Richmond* v. *Grizzard*, 205 Va. 298, 302, 136 S.E.2d 827, 830 (1964) (implied invitation existed where premises thrown open to public and visitor entered for purpose for which premises open); *Williamsburg Shop* v. *Weeks*, 201 Va. 244, 246, 110 S.E.2d 189, 191 (1959) (customer in department store was invitee).

Policemen and firemen, however, do not fit into any of these categories; they enter premises as of right, under a privilege based on a public purpose. They clearly are not trespassers. Nor can they be classified as licensees or invitees, who enter with consent or invitation of the occupant, as consent and invitation are irrelevant to a policeman's or a fireman's privileged entry.

In *Crouch*, we held the fireman to be "in a class of his own," or *sui generis*, "because of the public nature of his rights and duties." 208 Va. at 608, 159 S.E.2d at 655. We reaffirm this classification and we hold that it includes policemen as well as firemen. Firemen and policemen may, under certain circumstances in the course of their duties, enter property as licensees or invitees. In the present cases, however, the fireman and the policeman occupied neither status.

IV.

Some jurisdictions have abolished the distinction between licensees and invitees and established reasonable care as the standard owed by occupiers to firemen and policemen. *See, e.g., Bartholomew* v. *Klingler Co.*, 53 Cal. App. 3d 975, 980-81, 126 Cal. Rptr. 191, 193-94 (1975) (policeman injured in fall through ceiling during investigation of possible burglary); *Mounsey* v. *Ellard*, 363 Mass. 693, 707-08, 297 N.E.2d 43, 51-52 (1973) (abolishing li-

censee-invitee distinction and creating common duty of reasonable care to all lawful visitors in case involving injury to policeman who fell on accumulation of ice at defendant's residence); *Armstrong* v. *Mailand*, 284 N.W.2d 343, 350 (Minn. 1979) (landowner owed fireman, killed by explosion of gas storage tank, duty of reasonable care, except where, as here, fireman primarily assumed a risk apparent as part of firefighting). Other courts have reached the same result by labeling policemen and firemen as invitees in order to impose on occupiers an affirmative duty of reasonable care in maintaining the premises. *See, e.g., Dini* v. *Naiditch*, 20 Ill. 2d 406, 415-16, 170 N.E.2d 881, 885-86 (1960) (classification of firemen as anything but invitees deemed illogical); *Cameron* v. *Abatiell*, 127 Vt. 111, 118, 241 A.2d 310, 315 (1968) (policeman, injured on stairway during routine check of rear door, was a business visitor or invitee with right to assume premises were reasonably safe for the purpose).

Many courts, however, have held firemen and policemen to be either licensees or *sui generis* and entitled to no greater care than the limited duty owed to licensees. *See, e.g., Roberts* v. *Rosenblatt*, 146 Conn. 110, 113, 148 A.2d 142, 144 (1959) (status of city fireman was akin to that of licensee); *Nared* v. *School Dist. of Omaha*, 191 Neb. 376, 380, 215 N.W.2d 115, 118 (1974) (following Restatement (Second) of Torts § 345) (policeman, injured in fall caused by condition on part of premises not open to public, was licensee); *Krauth* v. *Geller*, 31 N.J. 270, 273-74, 157 A.2d 129, 130-33 (1960) (*sui generis* fireman who fell from unprotected balcony of house under construction could not recover for acts of defendant that were not wanton); *Scheurer* v. *Trustees of Open Bible Church*, 175 Ohio St. 163, 169, 192 N.E.2d 38, 43 (1963) (duty owed to firemen and policemen is that owed to licensees); *Cook* v. *Demetrakas*, 108 R.I. 397, 401-03, 275 A.2d 919, 922-23 (1971) (policeman, injured when he pursued fugitive through area of construction and fell over embankment caused by excavation at the site, was licensee).

■ We are persuaded by two fundamental policies to impose a rule of limited liability in cases such as these. First, injuries to firemen and policemen are compensable through workers' compensation. Code §§ 65.1-4, -4.1. The burden of their financial loss, therefore, is properly borne by the public rather than by individ-

ual property owners.[5] Second, and more important, firemen and policemen, unlike invitees or licensees, enter at unforeseeable times and go upon unusual parts of the premises, including areas not open to the public. Except for scheduled inspections, their presence at any particular time cannot be reasonably anticipated. In such situations, it is not reasonable to require the level of care that is owed to invitees or, without some modification, the level of care owed to licensees.[6]

We hold that, where an owner or occupier knows or has reason to know of a dangerous condition and knows or has reason to know of the presence on the premises of an officially privileged person whom the owner or the occupier knows or has reason to know is unaware of the danger, he owes a duty to use reasonable care to make the condition safe or to warn that person of the danger. *Cf.* Restatement (Second) of Torts §§ 342, 345. Further, an owner or occupier may be liable to firemen or policemen injured as a result of a violation of a statutory duty created for the express benefit of such persons. *See Scheurer*, 175 Ohio St. at 168, 192 N.E.2d at 43.

We expressly limit this holding to cases involving injuries occurring as the result of conditions on areas of the premises not open to the public, reserving decision on the issue whether a greater degree of care is owed to firemen and policemen injured on public areas, where the occupier may owe a duty to invitees to keep the premises safe. *See Beedenbender* v. *Midtown Properties*,

---

[5] In addition to coverage of policemen and firemen under the workers' compensation laws, the Code provides means for payment by municipalities of additional disability and death benefits. *See* §§ 15.1-136.1 to -136.7 (payments to beneficiaries of deceased law enforcement officers and firemen); §§ 27-39 to -50 (relief for firefighters and their dependents); §§ 51-115 to -127 (disability and death benefits payable as part of policemen's pensions).

[6] An occupier is liable to a licensee for injuries caused by a condition of the premises if he knows or should know of the condition, should realize the condition carries an unreasonable risk of harm to the licensee, should expect the licensee will not discover the danger, and fails to use reasonable care to make the condition safe or warn of the danger, provided the licensee does not know or have reason to know of the condition and risk. *Busch* v. *Gaglio*, 207 Va. 343, 348-49, 150 S.E.2d 110, 114 (1966) (adopting Restatement (Second) of Torts § 342). An occupier is liable to its invitee injured "as the result of an unsafe condition (one which was not open and obvious to the invitee) if the invitor knew it existed, or by the exercise of reasonable care should have discovered its existence, and failed to remedy the condition or otherwise to protect the invitee against the danger." *Appalachian Power Co.* v. *Sanders*, 232 Va. 189, 194, 349 S.E.2d 101, 105 (1986) (this day decided).

4 A.D.2d 276, 281-82, 164 N.Y.S.2d 276, 281 (1957); Restatement (Second) of Torts § 345(2).

## V.

Pearson challenges the trial court's action in sustaining demurrers to the negligence and negligence *per se* counts of his pleadings.

■ Pearson in essence alleged that defendants were negligent in their failure to warn him of a dangerous condition they had created. Under the rule applicable to licensees, an occupier is liable if he fails to use reasonable care to make safe a condition of which he knows or should know or to warn of the danger. *Busch* v. *Gaglio*, 207 Va. 343, 348-49, 150 S.E.2d 110, 114 (1966). Under the rule which we have enunciated with respect to firemen and policemen, the same duty arises, but only where the occupier knows or should know of their presence on the premises. Pearson did not allege that defendants were present or knew of Pearson's presence on the site or that they had an opportunity to warn him of the dangerous condition. The allegation that defendants knew or should have known that Pearson or other firemen had been and would probably be coming on the premises to fight fires at night is insufficient. There is no allegation that the firemen came on a routine schedule or at any time other than in response to fire alarms. Thus, there is no allegation that defendants knew or had reason to know of Pearson's presence on the premises at a time when the dangerous condition existed.

■ Pearson alleged that defendants violated a regulation, 29 C.F.R. § 1926.850 (1978), promulgated under the Occupational Safety and Health Act, and that this violation constituted negligence *per se*. Pearson, however, was not an employee within the class of persons for whose protection the regulation was enacted. Violation of the regulation, therefore, could not benefit Pearson on a negligence *per se* theory.

■ Pearson further alleged that defendants violated provisions of the Virginia Uniform Statewide Building Code and that this violation constituted negligence *per se*. Specifically, Pearson alleged violation of former § 115.3 of the Building Code, applicable at the time of his accident, which provided:

*Lot Regulation*: Whenever a structure is demolished or removed, the premises shall be maintained free from all unsafe

or hazardous conditions by the proper regulation of the lot, restoration of established grades and the erection of necessary retaining wall and fences in accordance with the provisions of Article 13.

The provisions of former Article 13, however, dealt with treatment of the lot after demolition of a building is complete. *See* §§ 1308.1, 1309.1. Reading these provisions together, we find that § 115.3 was not applicable to this demolition work in progress. Thus, the trial court properly sustained defendants' demurrers to Pearson's negligence *per se* count. Accordingly, we hold that the court did not err in sustaining the demurrers and dismissing Pearson's action.

## VI.

Booden challenges the trial court's action in denying its motion to strike the evidence, made at the conclusion of Jones's evidence and renewed after all the evidence had been presented, and in granting and refusing certain jury instructions. In moving to strike the evidence, Booden contended that Jones was required to prove that Booden knew he was on the premises or was likely to enter, that Booden knew of the condition, should have known it involved unreasonable risk to Jones, and should have expected Jones would not discover or realize the risk, and that Booden failed to exercise reasonable care to make the condition safe or warn Jones. These principles were subsequently incorporated in an instruction proffered by Booden and refused by the trial court.

Booden was not alleged to have violated any statutory duty. The sole basis of recovery was Booden's failure to discover the hazardous condition of the wooden platform and make the condition safe or warn Jones of the danger. The evidence showed that Booden had no knowledge or reason to know of the condition of the platform and no knowledge that Jones was on the premises or even that he was likely to come on the premises in the performance of his duties. Unlike *Cameron* v. *Abatiell*, 127 Vt. 111, 241 A.2d 310 (1968), relied upon by Jones, there was no evidence that Booden knew of any regular or routine police check of its property. Accordingly, Booden did not violate any duty owing to Jones.

Jones contended that he should be accorded the status of an invitee because the Booden property was the site of a business enterprise to which the public was invited. Jones was not on that

part of the premises open to the public and did not go on the property during business hours; there is no evidence that he entered on invitation, either express or implied.

Accordingly, we hold that the trial court erred in denying Booden's motion to strike the evidence and to enter summary judgment in favor of Booden. We will reverse the judgment in favor of Jones and enter judgment here in favor of Booden.

*Record No. 830982 — Affirmed.*
*Record No. 840521 — Reversed and*
*final judgment.*