# Stewart A. Goodwin

## v.

# David Keith Hare

Record No. 921959

November 5, 1993

Present: All the Justices

*Edward D. Barnes* for appellant.
*Frank G. Uvanni (Carl J. Witmeyer, II; Chalkley & Witmeyer)*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we decide whether the so-called ''fireman's rule'' bars a policewoman's claim for personal injuries intentionally inflicted by the defendant in resisting a lawful arrest.

The motion for judgment indicates that on October 6, 1990, Stewart A. Goodwin, a Hanover County Deputy Sheriff, attempted to arrest David Keith Hare. While resisting Goodwin's attempt to arrest him, Hare assaulted Goodwin, physically injuring her. Hare pled guilty to a charge of assault and battery.

Later, Goodwin sued Hare, seeking compensatory and punitive damages. Concluding that the fireman's rule barred Goodwin's action, the trial court sustained Hare's motion for summary judgment on the pleadings. Goodwin appeals.

The fireman's rule is a common-law doctrine that limits a defendant's liability for otherwise culpable conduct resulting in injuries and property damage to fire fighters, law enforcement officials, and their employers.[1] *See Benefiel v. Walker*, 244 Va. 488, 490, 422 S.E.2d 773, 774 (1992). The rule is based on an assumption of the usual risks of injury in such employment, ''whether caused by negligence or not.'' *Commonwealth v. Millsaps*, 232 Va. 502, 510, 352 S.E.2d 311, 315 (1987) (citing *Chesapeake & O. Ry. v. Crouch*, 208 Va. 602, 159 S.E.2d 650, *cert. denied*, 393 U.S. 845 (1968)). In *Crouch*, we said: ''If injured while encountering the ordinary hazards [the fireman's] duty requires him to confront, it is immaterial that the fire was negligently set.'' *Id.* at 608, 159 S.E.2d at 654.

We have never been presented with the applicability of the fireman's rule to an intentional tort. We have applied the fireman's

---

[1] After this incident occurred, Code § 8.01-226 was amended to provide that ''[w]hile otherwise engaged in the performance of his duties, a law-enforcement officer or firefighter shall be owed a duty of ordinary care.''

rule only in cases arising from ordinary negligence. *Millsaps*, 232 Va. at 510, 352 S.E.2d at 316 (property damage to state police cruiser); *Pearson v. Canada Contracting Co.*, 232 Va. 177, 184-85, 349 S.E.2d 106, 111 (1986) (personal injuries to fireman and policeman on defendants' premises); *Crouch*, 208 Va. at 608-609, 159 S.E.2d at 655 (fire fighter's death on defendant's premises). We have said that the application of the assumption of risk doctrine to these public officials is not based upon a spirit of venturesomeness in the face of a known danger; rather, it is based upon the relationship between the public officials and the public from which arises an obligation to accept the usual risks of danger involved in performing their fire fighting and law enforcement duties. *Millsaps*, 232 Va. at 509-10, 352 S.E.2d at 315; *Crouch*, 208 Va. at 608, 159 S.E.2d at 654.

■ One policy rationale underlying the fireman's rule is that fire fighters and law enforcement officers are compensated for their injuries and damages incurred in the line of duty by workers' compensation and other benefits. *Millsaps*, 232 Va. at 509, 352 S.E.2d at 315; *Pearson*, 232 Va. at 184-85, 349 S.E.2d at 111. Therefore, the financial losses of the employees and their employers are more appropriately borne by the public rather than by the negligent defendants. *Id.*

■ There is no reason, however, to shift that burden to the public in the case of injuries or damages intentionally inflicted upon these public officials or their employers.[2] Further, there are many reasons to impose that financial burden upon the intentional actor rather than the public. Indeed, we have indicated that the fireman's rule would not apply if the defendant's conduct was (1) wilful or wanton, *Millsaps*, 232 Va. at 510, 352 S.E.2d at 315, or (2) the violation of a statutory duty created for the express benefit of these public officials. *Pearson*, 232 Va. at 185, 349 S.E.2d at 111.[3]

---

[2] Those courts confronted with the defense of the fireman's rule in cases of an intentional tort have refused to apply the rule. *See, e.g. Anton v. Lehpamer*, 534 F.Supp 239, 241 (N.D. Ill. 1982); *Lipson v. Superior Court*, 644 P.2d 822, 826 (Cal. 1982); *Lang v. Glusica*, 393 N.W.2d 181, 183 (Minn. 1986); *Mahoney v. Carus Chemical Co.*, 510 A.2d 4, 9 (N.J. 1986). This view is shared by treatise authors. 5 Fowler V. Harper et al., The Law of Torts § 27.14, at 267 (2d ed. 1986); W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 61, at 430-32 (5th ed. 1984).

[3] In fact, Code § 18.2-57.1 expressly penalizes assault and battery upon law-enforcement officials.

Accordingly, we hold that the fireman's rule is inapplicable to intentional torts and the trial court should not have sustained Hare's motion for summary judgment. Therefore, we will reverse the judgment of the trial court and remand this case.

*Reversed and remanded.*

JUSTICE LACY, with whom JUSTICE COMPTON joins, dissenting.

In *Commonwealth v. Millsaps*, 232 Va. 502, 509, 352 S.E.2d 311, 315 (1987), this Court said, ''it has not been the policy of the law of Virginia to facilitate litigation by such public officers as a means of compensating them for injuries received in the line of duty, but rather to impose that burden on the public generally, through workers' compensation and other benefits.'' This conclusion was frustrated in *Benefiel v. Walker*, 244 Va. 488, 422 S.E.2d 773 (1992). See *id.* at 496-97, 422 S.E.2d at 778 (Compton, J., with whom Lacy, J., joined, dissenting). Today the Court again rejects this policy.

The fireman's rule is based on the concept of assumption of the risk and the single relevant test is whether the risk involved was beyond the usual risk or hazard contemplated in the officer's work. ''If injured while encountering the ordinary hazards his duty requires him to confront, it is immaterial that the fire was negligently set.'' *Chesapeake & O. Ry. v. Crouch*, 208 Va. 602, 608, 159 S.E.2d 650, 654, *cert. denied*, 393 U.S. 845 (1968). It is equally immaterial whether that hazard arose as a result of the actor's intentional act. What is material is whether the act was a usual risk or risk inherent in the officer's duty and, therefore, within the ambit of the assumption of risk doctrine. To reject the fireman's rule solely because the act causing the injury was intentional is overly simplistic. An intentional act may not fall within the ambit of the ordinary hazards of the officer's work; however, to determine whether it does, the act itself must be considered. To decide the issue solely on a finding that an act was intentional rather than negligent, as the majority has done, ignores the rationale of the fireman's rule.

The majority also seeks to justify its result on the belief that the burden for financial loss based on negligent acts is appropriately placed on the public through workers' compensation and other benefits, but that public expenditure is not appropriate when the loss is due to an intentional act. This policy is flawed, however, because

workers' compensation benefits are available, and are the exclusive remedy in many cases, for intentional as well as negligent acts whether the employment is in the public or private sector. Once again, the rationale for compensating work-related injuries through workers' compensation, paid for through the public fisc in the case of police officers, is grounded in the concept that the injury was within the inherent risks of the job, not in the nature of the act causing the injury.

In this case, an officer was attempting to arrest a suspect and the suspect resisted the arrest. In the course of resisting the arrest, the suspect hit and injured the officer. I cannot conceive of a hazard more naturally or commonly inherent in the occupation of a police officer than that of a suspect resisting arrest and of that resistance being accompanied by force.

Accordingly, I would affirm the judgment of the trial court.